**IT IS ORDERED as set forth below:**



**Date: March 31, 2021**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NUMBERS |
| | : | |
| DAVID L. SMITH, JR., | : | BANKRUPTCY CASE |
| | : | |
|     Debtor. | : | NO. 17-67324-LRC |
| _____ | : | |
| | : | |
| LENOX PINES, LLC, | : | ADVERSARY PROCEEDING |
| | : | NO. 18-05005-LRC |
| | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| DAVID L. SMITH, JR., | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
|     Defendant. | : | BANKRUPTCY CODE |

## <u>ORDER</u>

Lenox Pines, LLC ("Plaintiff"), alleges that David L. Smith, Jr. ("Defendant"),

acting as its manager, engaged in self-dealing by fraudulently borrowing and by

transferring Plaintiff's funds without authority to himself and his wholly owned business entities. Plaintiff further contends that Defendant intentionally caused Plaintiff's administrative dissolution to prevent Plaintiff from recovering its losses. Through a timely filed complaint, Plaintiff seeks a determination that the debts arising from Defendant's conduct are nondischargeable under 11 U.S.C. § 523(a)(2), § 523(a)(4), and § 523(a)(6)[1] (Doc., 1, the "Complaint"). Alleging that Defendant concealed and transferred an asset, made false oaths in his bankruptcy schedules, failed to keep adequate financial records, and failed to explain the loss of his assets, Plaintiff also objects to the entry of Defendant's discharge, pursuant to § 727(a)(2), § 727(a)(3), § 727(a)(4), and § 727(a)(5). *Id*.

Plaintiff seeks summary judgment against Defendant on all counts of the Complaint. (Doc. 49, the "Motion"). In opposition, Defendant asserts that genuine issues of material fact remain in dispute as to his intent in handling both Plaintiff's funds and his bankruptcy case, as well as the sufficiency of his record keeping and his explanation regarding the loss of his assets. This matter constitutes a core proceeding over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 1334; 157(b)(2)(I), (J).

---

[1] All further references to § are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq*., unless otherwise noted.

I.    Undisputed Material Facts[2]

A.    The Trust and Plaintiff

The Last Will and Testament of Dorsey R. Smith (the "Will") created a trust for the benefit of Defendant and his siblings, Britton McLeod ("McLeod") and D. Hayden Smith ("Hayden Smith, collectively with McLeod, the "Siblings").    Plaintiff's Statement of Undisputed Material Facts ("SUMF"), ¶ 1; Defendant's Response to SUMF ("Response to SUMF"), ¶ 1.    The Trust initially named David L. Smith, Sr. ("Smith, Sr.") and James N. Cline ("Cline") as co-trustees of the Trust.    SUMF, ¶ 2; Response to SUMF, ¶ 2.    Paragraph VIII.J. of the Will states: "In addition to those powers specifically given and granted to my fiduciaries herein, I also confer upon any and all Executors or Trustees all of those powers specifically authorized under the Official Code of Georgia Annotated and do hereby

---

[2] The Court has discerned the undisputed facts from Plaintiff's Statement of Undisputed Facts by relying primarily on admissions made in Defendant's Response to Plaintiff's Statement of Undisputed Facts.  In some instances, however, the Court has relied on Plaintiff's citations to uncontested affidavits and other documentary evidence, including the transcript of Defendant's deposition testimony.  *See* BLR 7056-1(a)(3) (Bankr. N.D. Ga.) ("All documents and other record materials relied upon by a party moving for or opposing a motion for summary judgment must be clearly identified for the Bankruptcy Court. Where appropriate, dates and specific page numbers must be given.").  The Court further notes that many of Plaintiff's asserted "undisputed facts" are not facts at all, but rather issues or legal conclusions.  For this reason, the Court has disregarded any such statements. *See generally Trauner v. Delta Airlines, Inc. (In re Think Retail Solutions, LLC),* 2019 WL 2912717, * 5 (Bankr. N.D. Ga. July 5, 2019) ("The Court agrees with Defendant that Plaintiff's SMF includes legal conclusions, arguments, and lengthy, pages-long statements, and will disregard any non-factual content in both parties' SMFs and Responses thereto for purposes of determining the undisputed material facts."); *see also* BLR 7056-1(a)(1) (Bankr. N.D. Ga.) ("Statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the Bankruptcy Court.").

3

specifically include by reference the powers so set out in the Official Code of Georgia Annotated and appropriate sections therein which deal with and enumerate the powers of fiduciaries. The inclusion of such powers by reference shall in no way limit or restrict those powers specifically set out herein, but are granted in addition thereto." SUMF, ¶ 2; Response to SUMF, ¶ 2.

Upon the death of Smith, Sr., the Will provided that the Trust *res* would be divided into three individual shares for Defendant and the Siblings. SUMF, ¶ 4; Response to SUMF, ¶ 4; Cline Affidavit, ¶ 6. The Will provides for Cline to be appointed as a co-trustee of "each and every Trust created by the Will." Will, Exhibit A to Cline Affidavit, Item VII, ¶ A. Upon division of the Trust into three equal shares for the benefit of Defendant and the Siblings, Defendant and the Siblings "shall qualify and commence service as a co-trustee of his or her respective share," continuing to serve with Cline until the property has been distributed in accordance with the terms of the Will. *Id*., ¶ B; *see also* Hayden Smith Affidavit, ¶ 3. Smith, Sr. passed away on or about June 29, 2008. Hayden Smith Affidavit, ¶ 3.

Plaintiff was organized as a Georgia limited liability company in order to invest the Trust's assets. Smith, Sr., managed Plaintiff and was a co-trustee of the Trust until he

4

passed away in 2008. The Trust is the sole owner and sole member of Plaintiff, and neither Defendant nor the Siblings were ever members of Plaintiff. SUMF, ¶ 3; Response to SUMF, ¶ 3; Supplemental Affidavit of James N. Cline (Doc. 52) ("Cline Affidavit"), ¶ 5; Affidavit of Hayden Smith (Doc. 52) ("Hayden Smith Affidavit"), ¶ 4. Plaintiff did not have a written operating agreement. Cline Affidavit, Exh. I (Deposition of David L. Smith, Jr., Aug. 31, 2016, at 80).

At the time of Smith, Sr.'s death, the corpus of the Trust consisted of cash totaling approximately $1,200,000, held in various financial accounts in the name of Plaintiff. SUMF, ¶ 5; Response to SUMF, ¶ 5; Cline Affidavit, ¶ 7. After the death of Smith, Sr., Defendant became the manager of Plaintiff. SUMF, ¶ 6; Response to SUMF, ¶ 6. On July 17, 2008, the Trust (acting through Cline) and Defendant executed a written contract with regard to Defendant's serving as the manager of Plaintiff (the "Agreement"). *Id*.; *see also* Hayden Smith Affidavit, ¶ 5, Exh. A. Pursuant to the Agreement, Defendant was responsible for the "day to day operations" of Plaintiff. Defendant was a signatory on Plaintiff's bank account with discretion to issue checks in an amount up to $5,000, but Defendant was required to consult with and obtain approval from Cline to issue checks in excess of $5,000. *Id*.

5

B.  <u>The Loans</u>

On or about April 8, 2009, Plaintiff made three loans to Defendant in the original principal amounts of $48,000, $36,500, and $45,000 (the "Loans").  SUMF, ¶¶ 9-10; Response to SUMF, ¶¶ 9-10.  The Loans were evidenced by three promissory notes (the "Notes").  The Notes reference as "collateral" three pieces of real property:  1851 Fort Valley Drive, 1434 Mill Acres Drive, and 647 Lynn Valley Road (the "Note Properties").  Cline Affidavit, ¶ 11, Exhs. E, F, G.  The Loans were due and payable in full on July 7, 2009, but repayment was extended to October 31, 2009, by Cline upon the request of Defendant made by letter on August 28, 2009.  *Id*.  In the letter, Defendant stated that "[d]ue to the delays in dealing with the Atlanta Housing Authority, which has resulted in much longer stabilization period than expected, Residential South Partners, LLC ["RSP"] needs to extend the maturity date until October 31, 2009," and that the Siblings "were aware and approve of this extension and the terms above."  Cline Affidavit, ¶ 12, Exh. H; Response to SUMF, ¶ 10.  Cline would not have authorized an extension of the deadline for repayment of the Loans if he had known that Defendant did not intend to repay the Loans and would have called the Loans due.  Cline Affidavit, ¶ 13.

Defendant used the proceeds of the Loans to purchase the Note Properties.  SUMF,

6

¶ 9; Cline Affidavit, ¶ 11.  Defendant did not repay the Loans on October 31, 2009.  SUMF, ¶ 12; Response to SUMF, ¶ 12.  On November 30, 2009, without Cline's knowledge, RSP pledged the Note Properties to another lender, American Trust Bank, in exchange for a loan of $132,000.  Cline Affidavit, ¶ 15, Exh. K.  Defendant did not repay the Loans on November 30, 2009.  SUMF, ¶ 13; Response to SUMF, ¶ 13.  RSP later sold the Note Properties and repaid the American Trust Bank loan but did not repay the Loans.  Cline Affidavit, ¶ 14.

C.   The Funds

Beginning in or around November 2009, Defendant, the Siblings, and Cline agreed "to invest the Trust Funds from [Plaintiff] in certain real estate investments in Atlanta, Georgia"—3776 North Stratford Road ("3776 North Stratford"), 3992 and 4000 Arden Way (the "Arden Way Properties"), and 5331 Northland Road ("Northland Road") (collectively, the "Agreed Transactions").  Hayden Smith Affidavit, ¶ 6.  On or about November 6, 2009, Defendant represented in writing to Cline and the Siblings that an investment in 3776 North Stratford was "an opportunity for the trust to generate income" and that Defendant planned for the investment to be "the first of others" that would "make some money for everyone."  Cline Affidavit, ¶ 18; Exhibit J; Response to SOMF, ¶ 16.

On June 21, 2010, Defendant sent an email message to Cline regarding an investment in the Arden Way Properties. Cline Affidavit, ¶ 19, Exh. L. In the email, Defendant stated that he had formed a new entity called RSP Arden Way, LLC ("RSP AW") to take title to the Arden Way Properties and that Plaintiff would be "one of the members if not the only member." *Id*. The email further states, however, that Defendant was "still working on the structure of the entity." *Id*. Attached to this email was a proposed operating agreement for RSP AW, dated June 22, 2010, which reflected that the members would be RSP and Plaintiff. *Id*. On June 24, 2010, Defendant sent an email message with the subject "Arden Way Amendments" to Cline stating that "we need to make [Plaintiff] the sole member, but I need to be the manager for a couple of reasons, mainly b/c the bank is requiring . . . ." Cline Affidavit, ¶¶ 19-20, Exh. M. Defendant transferred $536,000 from Plaintiff's account to the account of RSP AW on June 24, 2010. SUMF, ¶17; Response to SUMF, ¶ 17; Cline Affidavit, ¶¶ 19-20. On June 24, 2010, $536,000 of Plaintiff's funds were used by RSP AW to purchase the Arden Way Properties. SUMF, ¶¶ 17-18; Response to SUMF, ¶¶ 17-18; *see also* Defendant's Response to Interrogatories, Case No. 18-5004, Request No. 8, Exhibit W to Cline Affidavit (Doc. 41).

An operating agreement for RSP AW also dated June 22, 2010, lists RSP as the only

member of RSP AW.  Cline Affidavit, Exh. O.  Cline did not know that Defendant had changed the operating agreement for RSP AW to exclude Plaintiff as a member.  Cline Affidavit, ¶ 20.  Cline did not agree to the change.  *Id*. Defendant never repaid Plaintiff the $536,000 used by RSP AW to purchase the Arden Way Properties.  Cline Affidavit, ¶ 21.

On or about July 12, 2010, Defendant withdrew $50,000 from Plaintiff's account and deposited the funds into the account of RSP.  Cline Affidavit, ¶ 22.  Defendant concealed this transaction from Cline and never repaid Plaintiff the $50,000.  *Id*.  On or about November 10, 2010, Defendant withdrew $77,000 from Plaintiff's account using a cashier's check.  Cline Affidavit, ¶ 33; Smith Affidavit, ¶ 24.  Defendant did not have Cline's approval for this withdrawal.  Cline Affidavit, ¶ 26.  Cline was not aware of the withdrawal at the time it was made.  *Id*. ¶ 39.  Defendant used the $77,000 to purchase real estate known as 3795 North Stratford Road, Atlanta, Georgia, in the name of RSP (the "3795 Stratford").  Cline Affidavit, ¶ 33; Response to SUMF, ¶ 34; Defendant's Response to Interrogatories, Case No. 18-5004, Request No. 5, Exhibit W to Cline Affidavit (Doc. 41).  On June 25, 2013, RSP quitclaimed 3795 Stratford to Defendant.  SUMF, ¶ 32; Response to SUMF, ¶ 32; Cline Affidavit, ¶ 34, Exh. U.  Defendant made 3795 Stratford his principal residence.  Response to SUMF, ¶¶ 32, 40.

9

On or about January 13, 2011, Defendant transferred $489,310.64 from Plaintiff's account to RSP I, LLC ("RSP I").  SUMF, ¶ 21; Response to SUMF, ¶ 21.  Cline did not approve the transfer of the $489,310.64 from Plaintiff's account to RSP I.  Cline Affidavit, ¶ 23.  Defendant never repaid Plaintiff the $489,310.64 transferred from Plaintiff's account to RSP I.  Cline Affidavit, ¶ 23.

Defendant failed to file Plaintiff's annual registration, and Plaintiff was administratively dissolved on September 3, 2012.  Neither Cline nor Hayden Smith agreed to allow Plaintiff to be administratively dissolved.  Cline Affidavit, ¶ 25; Smith Affidavit, ¶ 17.  Subsequently, Defendant was removed as manager of Plaintiff.  Hayden Smith was appointed as manager of Plaintiff, and Smith reinstated Plaintiff on October 28, 2013.  Cline Affidavit, ¶ 26; Smith Affidavit, ¶¶ 19-20; SUMF, ¶ 24; Response to SUMF, ¶ 24.  Thereafter, Plaintiff demanded Defendant repay the Loans and give an accounting of his use of funds obtained from Plaintiff. Cline Affidavit, ¶ 27.  Defendant failed to provide an accounting.  *Id*.  Defendant failed to repay the Loans.  SUMF, ¶ 25; Response to SUMF, ¶ 25.  Plaintiff retained counsel and made a formal demand for repayment of the Loans in 2013.  Cline Affidavit, ¶ 28; Smith Affidavit, ¶ 22.

In August 2013, Defendant, through his legal counsel, acknowledged owing the

10

Loans to Plaintiff and assured Plaintiff that repayment would be made. Cline Affidavit, ¶ 29. Defendant did not provide an accounting and did not repay the Loans. *Id*. On October 10, 2013, Plaintiff made a final demand for payment of the Loans. When Defendant failed to pay, Plaintiff filed suit in Fulton County against Defendant on January 2, 2014 (the "Lenox Pines Action"). SUMF, ¶ 28; Response to SUMF, ¶ 28; Cline Affidavit, Exh. T. On August 30, 2017, Plaintiff was granted summary judgment in the Lenox Pines Action on Counts 1, 2, and 3 of its complaint against Defendant. SUMF, ¶ 39; Response to SUMF. Defendant was granted summary judgment with respect to the counts for breach of fiduciary duty, conversion, conflict of interest transactions in violation of O.C.G.A. §14-11-307(c), money had and received and unjust enrichment and punitive damages. Debtor's Response and Objection to Plaintiff's Motion for Summary Judgment ("Debtor's Response"), at 6, Exh. F.[3]

D.  The Bankruptcy

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 3, 2017 (the "Petition Date"). SUMF, ¶ 44; Response to SUMF, ¶ 44. Martha

---

[3] The order entered by the state court in the Lenox Pines Action summarily states that judgment was granted for the reasons stated on the record in open court. Neither party has made a transcript of that hearing available to the Court.

Miller (the "Chapter 7 Trustee") is the duly appointed Chapter 7 trustee in the case (the "Bankruptcy Case").   Complaint, ¶ 4; Defendant's Answer to the Complaint (the "Answer"), ¶ 4 (Doc. 9).  On January 4, 2017, Plaintiff filed the Complaint.

Defendant signed the Schedules and Statement of Financial Affairs ("SOFA") that he filed in the Bankruptcy Case.   Complaint, ¶ 6, Answer, ¶ 6.   On the Petition Date, Defendant owned a life insurance policy with cash value in excess of $20,000 (the "Life Insurance Policy").   SUMF, ¶ 44; Response to SUMF, ¶¶ 43-44.   Defendant did not list a life insurance policy as an asset on his original Schedule A/B filed on the Petition Date. Bankruptcy Case, Doc. 1, at 27.   Defendant amended some of his schedules on October 17, 2017, but did not amend Schedule A/B.   *Id*., Doc. 10.[4]  In the SOFA originally filed by Defendant on the Petition Date, Defendant stated that he had no income from employment or operation of a business in 2015, 2016, or 2017.   Bankruptcy Case, Doc. 1, at 9.   On October 17, 2017, Defendant amended some of his schedules but did not amend his SOFA. *Id*., Doc. 10.   On January 3, 2018, Denise Dotson filed a notice of appearance as counsel for Defendant in the Bankruptcy Case.   Bankruptcy Case, Doc. 52.   On January 31, 2018,

---

[4]   The Court takes judicial notice of the Schedules and SOFA filed in the Bankruptcy Case for the purpose of determining what Defendant disclosed or failed to disclose.   *In re Udelhoven*, 2021 WL 186985, at *18 (Bankr. N.D. Ill. Jan. 14, 2021).

Defendant amended Schedule A/B but did not disclose the Life Insurance Policy. Bankruptcy Case, Doc. 67, at 15.

Defendant amended his SOFA to disclose income from operation of a business for years 2015, 2016, and 2017 in an "unknown" amount. Bankruptcy Case, Doc. 67, at 1-2. Defendant provided an explanation as to his income: "Debtor has not completed tax returns but is in the process of having the returns completed. Once completed, Debtor will supplement the response." *Id*., at 3. Defendant has never amended his SOFA to disclose a specific amount of income for years 2015, 2016, and 2017. Bankruptcy Case, Docket. The last contact Defendant had with his former accountant, John Rimel, occurred in August 2017 when Defendant hired Rimel to provide tax services regarding one of his entities. Defendant hired Rimel to prepare his 2013 tax return but has not contacted Rimel regarding the preparation of any other of his individual tax returns. Transcript of Rule 2004 Examination of John Rimel, Doc. 46, at 10-11, 20-21.[5]

II.    Conclusions of Law

    A.    Summary Judgment Standard

---

[5] Defendant has reserved the right to cross examine Mr. Rimel as to this testimony but points to no evidence that calls into dispute these basic facts. Accordingly, the Court finds that these facts are undisputed.

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine, therefore, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir.1993). Rather, the nonmoving party must present specific facts supported by evidence that demonstrate there is a genuine material dispute. *Id.* The facts and all resulting inferences are viewed in a light most favorable to the non-moving party,

14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and the Court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson*, 477 U.S. at 251-52.  "The court cannot weigh the evidence or choose between competing inferences." *In re Chi*, 2008 WL 7874773, at *2 (Bankr. N.D. Ga. Aug. 29, 2008) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997)).

    B.  <u>11 U.S.C. § 523(a)</u>

    A primary purpose of the Bankruptcy Code is a "fresh start" for the honest but unfortunate debtor.  *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Accordingly, exceptions to discharge are generally construed narrowly against a creditor and liberally in favor of the debtor.  Thus, the creditor has the burden to prove each element necessary under § 523(a) by a preponderance of the evidence.  *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

    1.  <u>§ 523(a)(2)</u>

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt is excepted from discharge if it is a debt: "(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained, by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."   11 U.S.C. § 523(a)(2)(A).   Although "[c]ourts are divided on whether forbearance constitutes an extension of credit under 11 U.S.C. § 523(a)(2)(A)," *In re Hay Phat*, 623 B.R. 371, 377 (Bankr. E.D. Pa. 2021), the Court agrees with the majority view that a debt arising from a creditor's agreement to forbear is a debt for "an extension . . . of credit" within the meaning of § 523(a)(2)(A).   *Field v. Mans*, 157 F.3d 35, 45 (1st Cir. 1998) ("This was, therefore, a situation where the Fields had an equity in the property at the time of the fraud and could have recovered their debt had they elected at that time to exercise the acceleration clause. Mans's fraud deprived them of that opportunity."); *Ojeda v. Goldberg*, 599 F.3d 712, 718 (7th Cir. 2010) (holding that a "fraudulently induced forbearance does constitute an extension or renewal" of credit); *In re Baxter*, 294 B.R. 800, 807 (Bankr. M.D. Ga. 2003).   "Although false pretenses, false representation, and actual fraud represent different concepts, the elements of scienter, reliance, and materiality are common to all and must be proven by a preponderance of the evidence in order for the

16

creditor to prevail." *In re Alvarado*, 608 B.R. 877, 884–85 (Bankr. W.D. Okla. 2019).

To prevail under § 523(a)(2)(A) on the basis of a false representation, Plaintiff must establish that: (1) Defendant made a false representation, other than an oral statement respecting his or an insider's financial condition, with intent to deceive Plaintiff; (2) Plaintiff actually relied on the misrepresentation; (3) the reliance was justifiable; and (4) the misrepresentation caused a loss to Plaintiff. *See Advance Financial Corp. v. Gross (In re Gross)*, 2011 WL 3881015, *5 (Bankr. N.D. Ga. June 10, 2011). With regard to a debt for a fraudulently induced forbearance, "the creditor must prove that '[1] it had valuable collection remedies at the time of the misrepresentation, [2] it did not exercise those remedies based upon the misrepresentation, and [3] that the remedies lost value during the extension period.'" *Ojeda v. Goldberg*, 599 F.3d 712, 719 (7th Cir. 2010) (quoting *In re Kucera*, 373 B.R. 878, 885 (Bankr. C.D. Ill. 2007)). This requirement ensures that the creditor asserting fraudulently induced forbearance has established that the misrepresentation actually caused a loss to the creditor.[6]

---

[6] In *In re Anzo*, Judge Sacca concluded that a plaintiff need not make an additional showing of damages caused by the forbearance to establish nondischargeability under § 523(a)(2)(B) because the statute's plain language does not include such a requirement. Section 523(a)(2)(A), however, requires a creditor to show that the fraud alleged resulted in a loss. 547 B.R. 454, 473 (Bankr. N.D. Ga. 2016) (recognizing that, "[f]ollowing common law, § 523(a)(2)(A) requires a creditor to prove damages just as the common law tort of fraud contains such an element.") (citing *In re Bilzerian*, 153 F.3d 1278, 1282 (11th Cir.1998); *In re Wood*, 245 F. App'x 916, 917–18 (11th Cir. 2007)).

17

As to the first element, Plaintiff must prove that Defendant made a false representation with the intent to deceive Plaintiff or made a promise to Plaintiff he had no intention of keeping. However, "[s]ilence or concealment of a material fact can create a false representation under § 523(a)(2)(A)." *In re Montgomery*, 489 B.R. 609, 625 (Bankr. N.D. Ga. 2013). The Court "may infer fraudulent intent based on the circumstances, but 'if there is room for an inference of honest intent, the question of nondischargeability must be resolved in the debtor's favor.'" *Gross*, 2011 WL 3881015, *6; *In re Montgomery*, 489 B.R. at 625 ("To determine whether the misrepresentations were made with an intent to deceive is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent."). "[F]raud may be predicated on promissory statements if, 'when the representation is made, the promisor knows that the future event will not take place.'" *In re Brandon*, 297 B.R. 308, 314 (Bankr. S.D. Ga. 2002).

As to reliance, justifiable reliance is a less rigid standard than "reasonable reliance," and requires the "bankruptcy courts to apply a subjective test to determine whether a creditor justifiably relied on a debtor's misrepresentation." *Montgomery*, 489 B.R. at 626;

18

*see also Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). "A creditor's reliance is typically justified when there is nothing on the face of the representation that it is false or that the creditor does not have actual knowledge of the falsity of the representation." *Montgomery*, 489 B.R. at 626. Although the Court can consider Plaintiff's "access to information" as a factor "when assessing justifiable reliance," there "is no duty to investigate under the justifiable standard." *Id*. at 627; *see also Ojeda,* 599 F.3d at 718 ("As the Supreme Court held in *Field*, creditors have no duty to investigate if they are unaware of a potential falsity.").

Finally, Plaintiff must demonstrate that Defendant's misstatement caused a loss or other harm to Plaintiff. *See Brandon*, 297 B.R. at 316 ("The final question is whether SunTrust was harmed by relying on Debtor's silence in twice renewing the note."); *In re Hemken*, 513 B.R. 344, 356 (Bankr. E.D. Wis. 2014) (holding that a § 523(a)(2)(A) claim based on fraudulent extension of credit failed due to the plaintiff's inability to prove that it was "damaged in reliance on the Debtor's representations"); *In re Wyss*, 355 B.R. 130, 136 (Bankr. W.D. Wis. 2006) ("[T]he creditor in this context [of a forbearance] must demonstrate that it had valuable collection remedies at the time of the misrepresentation, that it did not exercise those remedies based upon the misrepresentation, and that those

19

remedies lost value during the extension period.").

Alternatively, a plaintiff may prevail under § 523(a)(2)(A) by demonstrating that the debt was for money or an extension of credit obtained through "actual fraud." Actual fraud within the meaning of § 523(a)(2)(A) includes the making of "a promise to do something that the promisor does not intend to do at the time of the statement." *In re Cloninger*, 548 B.R. 839, 855 (Bankr. N.D. Ga. 2016), *aff'd sub nom. Cloninger v. Cloninger*, 2017 WL 11496867 (N.D. Ga. Oct. 24, 2017) (citing *FDS Nat'l Bank v. Alum (In re Alum),* 314 B.R. 834, 840–41 (Bankr. N.D. Ga. 2004)). Yet actual fraud is not limited to "inducement-type" fraud, in which one party commits fraud to induce another to extend or renew credit. For example, it can include a "scheme" to make fraudulent conveyances. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586, 194 L. Ed. 2d 655 (2016) (stating that "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'"). "In such cases, the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt," but rather "is in the acts of concealment and hindrance." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587, 194 L. Ed. 2d 655 (2016). Essentially, a debt arising from a debtor's intentional engagement in a "'scheme to deprive or cheat another of property or legal right'" is a debt arising from "actual fraud." *In re Alvarado*, 608 B.R. 877, 884 (Bankr. W.D. Okla. 2019).

20

Finally, a debt is nondischargeable under § 523(a)(2)(A) if it was incurred through "false pretenses," which is defined as "[a] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor." *In re Cawthon*, 594 B.R. 913, 920 (Bankr. N.D. Ga. 2018). "A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor." *Id.* Plaintiff need not show an express misrepresentation. *Id.* "In order to establish that a debt is nondischargeable under § 523(a)(2)(A) as a false pretense, a plaintiff must prove by a preponderance of the evidence that: '(1) the [defendant] made an omission or implied misrepresentation; (2) promoted knowingly and willingly by the defendant[ ]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff [ ]; (4) which wrongfully induced the plaintiff[ ] to advance money, property, or credit to the defendant.'" *Id.* (quoting *Tropicana Casino & Resort v. August (In re August)*, 448 B.R. 331, 350 (Bankr. E.D. Pa. 2011) (internal quote omitted)).

21

Accordingly, to obtain summary judgment on its § 523(a)(2)(A) claim, Plaintiff must prove that Defendant owes Plaintiff a debt "for money, property, services, or an extension, renewal, or refinancing of credit," and that the money, property, or extension of credit was obtained by one of the types of fraud outlined above. In the Motion, Plaintiff asserts that it is entitled to judgment as a matter of law because the undisputed facts show that Defendant obtained money and an extension of credit (a forbearance on the Loans) through false representations, actual fraud, and false pretenses. As noted above, however, all of these theories require a showing of fraudulent intent and justifiable reliance. The Court agrees for the reasons stated below that material questions of fact remain in dispute as to these elements.

Further, as to the debt owed on the Loans, Plaintiff asserts that Defendant lied to Plaintiff about his intention to repay the Loans to induce Plaintiff to forbear on calling the Loans due. As detailed above, when making a claim for fraudulently induced forbearance, a plaintiff must demonstrate that it had valuable collection remedies at the time of the misrepresentation; that it did not exercise those remedies based upon the misrepresentation; and that the remedies lost value during the extension period. Although the undisputed facts have established that Plaintiff, acting through Cline, would have called the Loans due,

22

Plaintiff has not addressed the existence of collection remedies at the time of misrepresentation or at the end of the extension period. Accordingly, summary judgment would not be warranted on the § 523(a)(2)(A) claim as to the Loans.

Plaintiff also asserts that Defendant owes Plaintiff a debt for the funds that Defendant, acting as Plaintiff's manager, but in excess of his authority, transferred away from Plaintiff to other entities for no consideration as part of his fraudulent scheme to abandon Plaintiff and the Trust (the "Funds"). Plaintiff submits that Defendant made these transfers with the intent to deceive Plaintiff, as evidenced by Defendant's concealment of several of the transfers from Cline and Defendant's false statements regarding the operating agreement for RSP AW. Defendant argues that disputes regarding material facts remain as to whether he made any misrepresentation with intent to deceive Plaintiff and as to whether Plaintiff could have justifiably relied on any misrepresentations when there is evidence that Plaintiff and the Siblings knew about the Agreed Transactions and the Siblings knew of Defendant's plan to abandon Plaintiff and the Trust. The Court agrees with Defendant that "[i]ntent is a subjective issue that requires a court to 'examine the totality of the [Defendant's] actions to determine if [he] possessed the requisite intent to deceive" Plaintiff. While Defendant's own, uncontroverted testimony and the undisputed facts of

23

this case establish that Defendant intended to deceive Cline about his intention to return the Funds to Plaintiff, the record evidence also permits the inference that Defendant kept the Siblings fully advised of these facts and that he always intended to return the Funds to the Siblings in satisfaction of their beneficial interests in the Trust. Perhaps there is an argument that Plaintiff's intent to deceive Cline should be the end of the analysis, as Plaintiff is the creditor and the Funds were Plaintiff's property. Yet the Court is not convinced that the undisputed facts establish that Cline was the sole party with authority to act for Plaintiff or that Defendant viewed Cline as the sole authority to act for Plaintiff.

It appears that Plaintiff did not have an operating agreement and that the parties believed, at least initially, that Cline had the authority to make decisions for Plaintiff because he was the trustee of the Trust and the Trust was the sole member of Plaintiff. *See* Hayden Smith Affidavit, ¶ 5 ("Any transaction larger than [$5,000] required Trust approval"). This is evidenced by the fact that Cline signed, on behalf of the Trust, an agreement with Defendant to allow Defendant limited authority to act as Plaintiff's manager. Yet Plaintiff's own evidence establishes that Cline was only a co-trustee with Defendant and the Siblings as to their respective shares of the Trust as early as June 29, 2008, upon the death of Smith, Sr. This leaves open the possibility that Cline could not act

24

unilaterally for the Trust in making decisions regarding Plaintiff. *See* O.C.G.A. § 53-12-204. ("The authority of cotrustees to act on behalf of the trust shall be as follows: (1) "A power vested in two or more trustees shall only be exercised by their unanimous action; provided, however, that a cotrustee may delegate to one or more other cotrustees the performance of ministerial acts."). This is not to say that the actions Cline took regarding to the Trust or Plaintiff were necessarily invalid, but only that it calls into question whether Defendant could have intended to deceive Plaintiff by lying to Cline if he was also telling the Siblings of his plan and believed that the Siblings had the right to act for the Trust and, therefore, to control Plaintiff. It also raises issues concerning whether Plaintiff could have actually relied on any misrepresentations made to Cline. If the Siblings knew about the plan to abandon Plaintiff and the Trust, such knowledge could be imputed to Plaintiff if the Siblings had the authority, with Cline, to act for the Trust and to control Plaintiff.

There is clearly a question of fact as to the Siblings' knowledge. *See* Hayden Smith Affidavit, ¶ 7 ("Defendant represented that he would pay back all of the Trust Funds to [Plaintiff] when the [Agreed Transactions] were completed."); ¶ 9 ("[Defendant never told me during the Arden Way Agreed Upon Deals that he actually made this transfer [of $536,000 to purchase the Arden Way Properties] as part of his plan to abandon and dissolve

25

the Trust and Plaintiff."); Cline Affidavit, Exh. I (Deposition of David L. Smith, Jr., Aug.

31, 2016, at 64-65) (discussing Defendant's plan to abandon Plaintiff and the Trust,

Defendant stated that, as of October 29, 2009, the Siblings were "all involved" and had

been discussing it with Defendant and that all "knew that ultimately we were never going

back to [Plaintiff] and the Trust"); Cline Affidavit, Exh. Q (Deposition of David L. Smith,

Jr. as 30(b)(6) Representative of RSP I, Sept. 9, 2016) at 6-7 (testifying that on or about

January 13, 2011, RSP I received $489,310.64 from Plaintiff and purchased Northland

Road and the Siblings were aware of the Northland Road transaction); Cline Affidavit, Exh.

I (Deposition of David L. Smith, Jr., Aug. 31, 2016, at 77-78) (testifying that Defendant

and the Siblings decided to deceive Cline because he was "misusing the [T]rust" and lying

them about the language of the Trust).[7]  At this stage, the Court cannot weigh the evidence

and determine whether the Siblings knew about Defendant's plan.  As this knowledge

---

[7] Defendant further asserts that his ultimate intent to return money to the Siblings is relevant to whether he was acting with fraudulent intent.  In this regard, he argues that he did return some profits to the Siblings, which suggests that he had no fraudulent intent, at least with regard to the Siblings.  The Court notes that Defendant has not referred specifically to evidence that is properly in the record for purposes of the Motion.  Defendant's brief (Doc. 53, Exh. H) details specific payments, totaling $359,091 made to the Siblings.  The documents themselves are not attached. Further, the list of identified payments is not in the form of, or even attached to, an affidavit.  Nonetheless, the Court agrees that repayments of money to the Siblings is relevant to Defendant's intent, and it appears that Plaintiff, throughout the course of litigating discovery issues in connection with the Complaint has requested and been provided with documents that establish the existence of such payments.  Accordingly, the Court's consideration of the payment documents for purposes of determining whether there is a question of fact will not prejudice Plaintiff.

appears to be relevant to Defendant's intent and Plaintiff's reliance, and each "requirement of section 523(a)(2)(A) must be met for the application of this exception to discharge, . . . the Court concludes summary judgment should be denied as to Plaintiff's claim under section 523(a)(2)(A)." *In re McDowell*, 497 B.R. 363, 373 (Bankr. N.D. Ga. 2013).

2. § 523(a)(4)

Under § 523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is not dischargeable.  11 U.S.C. § 523(a)(4); *see also Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269, 133 S. Ct. 1754, 1757, 185 L. Ed. 2d 922 (2013).  "To establish a claim for fiduciary fraud or defalcation under Section 523(a)(4), a creditor must show: (1) that the debtor held a fiduciary position *vis a vis* the creditor under a technical, express or statutory trust; (2) that the claim arose while the debtor was acting as a fiduciary; and (3) that the claim is for fraud or defalcation." *Cloninger*, 548 B.R. at 856.

As to whether Defendant was a fiduciary with regard to Plaintiff, "the term 'fiduciary' in § 523(a)(4) 'is not to be construed expansively, but instead is intended to refer to 'technical' trusts.'"  *Id*. (quoting *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993)).  Accordingly, "a trust for purposes of § 523(a)(4) must be 'an express trust created by statute

27

or contract that imposes trust-like duties on the debtor and that pre-exists the alleged defalcation,' as opposed to constructive or resulting trusts." *Id.* (citing *Guerra v. Fernandez–Rocha (In re Fernandez–Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006). That being said, such "a technical or express trust" is not "limited to formal contractual trust agreements but can include relationships in which trust type obligations are imposed pursuant to statute, or potentially by common law," and "state law can be consulted in ascertaining whether such a duty has been imposed." *Id.* (citing *Quaif*, 4 F.3d at 954); *see also In re Pervis*, 497 B.R. 612, 639 (Bankr. N.D. Ga. 2013). "[A]n ordinary business relationship does not qualify as a technical trust. *In re Morales*, 2013 WL 3335052, at *6 (Bankr. N.D. Ga. June 26, 2013); *Hot Shot Kids Inc. v. Pervis (In re Pervis)*, 497 B.R. 612, 640 (Bankr. N.D. Ga. 2013) (holding that "merely being an officer or director of a corporation, without more, does not create a fiduciary relationship for purposes of 11 U.S.C. § 523(a)(2)(A)").

The fiduciary obligation owed to a limited liability company by its manager does not satisfy "the strict test for determining fiduciary status under Section 523(a)(4)." *In re Thompson,* 2020 WL 2048006, at *4 (Bankr. N.D. Ga. Apr. 28, 2020); *In re Wheelus,* 2008 WL 372470, at *3 (Bankr. M.D. Ga. Feb. 11, 2008) (rejecting the argument that the

28

managers of a limited liability company owed the limited liability company or its member a fiduciary duty of the sort that would trigger § 523(a)(4)); *Hinton v. Blocker (In re Blocker)*, 2020 WL 247311 at *6-7 (Bankr. N.D. Ga. Jan. 15, 2020) (holding that manager and member of limited liability corporation did not hold trust-like duties sufficient to satisfy federal test for fiduciary status); *National Identity Solutions, LLC v. Logan (In re Logan)*, 2015 WL 4940041 (Bankr. N.D. Ga. July 1, 2015) (stating that a "fiduciary status" that is based on a party's "position as manager and member of a limited liability company" is not "the type of trust-like duties necessary to meet the strict standard for fiduciary capacity under § 523(a)(4)"); *In re McKnew*, 270 B.R. 593, 629 (Bankr. E.D. Va. 2001) (holding that manager of limited liability company did not owe a fiduciary obligation sufficient to trigger § 523(a)(4) because Virginia law regarding the duties of a manager did not "impose any trust upon funds contributed to a limited liability company for capital or otherwise" or "address the relationship between a manager and the monies of a limited liability company").

Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Ga. Dep't Human Servs. v. Ngwangu (In re Ngwangu)*, 529 B.R. 358, 365 (Bankr. N.D. Ga. 2015)

29

(quoting *Fernandez v. Havana Gardens, LLC*, 562 F. App'x. 854, 856 (11th Cir. 2014)).

A debtor cannot commit embezzlement when he is legally entitled to the funds. *See*

*Cloninger v. Cloninger*, 2017 WL 11496867, at *3 (N.D. Ga. Oct. 24, 2017) (holding that

debtor could not have embezzled insurance proceeds to which he was contractually

entitled). To establish embezzlement, Plaintiff must show that: "(i) property owned by

another is rightfully in the possession of the debtor; (ii) the debtor appropriates the property

for personal use, and (iii) the appropriation occurred with fraudulent intent or by deceit."

*In re Pervis*, 512 B.R. 348, 382–83 (Bankr. N.D. Ga. 2014). "'Thus, to amount to

embezzlement, conversion must be committed by a perpetrator with fraudulent intent.'" *In*

*re McQuillin*, 509 B.R. 773, 785 (Bankr. D. Mass. 2014) (quoting *In re Sherman*, 603 F.3d

11, 13 (1st Cir. 2010)). "Embezzlement accordingly requires proof that (i) property in the

perpetrator's lawful possession but (ii) belonging to another (iii) was appropriated by the

perpetrator in a manner inconsistent with the property rights of the other and the scope of

his or her authorization to deal with the property (iv) with fraudulent intent." *Id*. "'It is

knowledge that the use is devoid of authorization, scienter for short ... that makes the

conversion fraudulent and thus embezzlement.'" *Id*.

First, with regard to Plaintiff's claim that the debt arose through Defendant's fraud

and defalcation while acting in a fiduciary capacity, Plaintiff is the creditor that has filed

the Complaint.  Plaintiff made loans to Defendant, which Defendant failed to repay, and

Defendant transferred the Funds in furtherance of real estate deals that Plaintiff asserts

benefitted only Defendant and his business entities, without Plaintiff's authorization.

Plaintiff seeks a determination that these debts are nondischargeable because the failure to

repay the Funds amounts to fraud or defalcation while acting in a fiduciary capacity due to

Defendant's position as Plaintiff's manager.  Plaintiff must, therefore, demonstrate that

Defendant was acting in a fiduciary capacity with regard to Plaintiff.  As Defendant notes,

although Plaintiff spends a considerable amount of time discussing Defendant's role as a

co-trustee of the Trust, Plaintiff is not the Trust or a beneficiary of the Trust.  Accordingly,

as between Plaintiff and Defendant, Plaintiff has established only an ordinary business

transaction, which is outside the scope of § 523(a)(4).

Second, as to Plaintiff's claim that the debt arose as a result of Defendant's

embezzlement, Defendant objects to the Court's consideration of a request for summary

judgment on this basis because Plaintiff "for the first time, asserts a claim under Section

523(a)(4) for embezzlement" in the Motion and did not plead such a claim in the Complaint.

Defendant correctly asserts that a plaintiff "cannot raise new allegations and new claims in

a motion for summary judgment which were not properly pled in the Complaint and of which Debtor was not provided sufficient and adequate notice." In support of his argument, Defendant notes that "[c]onclusory statements, recitation of law, and general allegations are insufficient to encompass new specific claims asserted for the first time in a motion for summary judgment." *See Davis v. Coca-Cola Bottling Co., Consolidated*, 516 F.3d 955, 974 (11th Cir. 2008). Defendant acknowledges that the Complaint expressly cites § 523(a)(4), but argues that Paragraph 41 of the Complaint "specially states that the basis for excepting indebtedness that may be due and owing to the Plaintiff by the Debtor is because of 'actual fraud and defalcation of Plaintiff's funds while Debtor was acting in a fiduciary capacity as Plaintiff's Manager and agent' and that the Complaint does not specifically raise or assert embezzlement as a basis for excepting any debt that Defendant may owe Plaintiff."

The Court disagrees. The Complaint is clear throughout that Plaintiff is asserting that Defendant embezzled money from Plaintiff. The Complaint repeatedly uses the word "embezzled" and alleges facts that, if proven at trial, support such a claim. This, coupled with a specific cite to § 523(a)(4), placed Defendant on sufficient notice that Plaintiff is asserting a claim for both fraud and defalcation while acting in a fiduciary capacity and

32

embezzlement.

The Complaint alleges that Defendant borrowed money from Plaintiff (the Loans) and that Defendant transferred other money (the Funds) without Plaintiff's specific authorization and used the Funds for his own purposes and failed to repay any of the money. As to the borrowed money, that is not embezzlement. It is simply a breach of a contract. *See Matter of Ngwangu*, 529 B.R. 358, 365–66 (Bankr. N.D. Ga. 2015) (noting that debtor who received overpayment of food stamp benefit "did not steal any property . . . since it was given to her with the authority of GDHS"). As to the Loans, there is no evidence to support a finding that Plaintiff entrusted money to Defendant for a specific purpose. Rather, the evidence submitted and relied upon by Plaintiff shows that Plaintiff loaned the money to Defendant upon the promise that Defendant would repay the money. He could not, therefore, embezzle the money he received through the Loans.

As to the Funds, the undisputed facts show that Defendant transferred the Funds to himself and to his business entities for no consideration. Plaintiff, however, must show that its property was "rightfully in the possession of the debtor"; "the debtor appropriate[d] the property for personal use; and "the appropriation occurred with fraudulent intent or by deceit." As noted in the Court's discussion of § 523(a)(2)(A), disputed questions of fact

33

remain as to Plaintiff's intent in making the transfers.  The record contains evidence from which it could be inferred that Defendant and the Siblings agreed to a plan that would use Plaintiff's money to invest in real estate and that the Siblings were always aware that Defendant did not intend for Plaintiff to have an ownership interest in the properties or to receive it money back.  Instead, the Siblings intended the properties to be sold and the profits to be paid in equal shares to Defendant and the Siblings in lieu of their "Trust Funds."  Under this view of the facts, it is possible that Defendant's transfer of the Funds was consistent with the plan that Defendant claims to have openly shared with the Siblings, who, as noted above, may have had authority to act for the Trust and to control Plaintiff.  Given this dispute of fact, the Court leaves open the possibility that Defendant subjectively believed that the transfers were authorized by Defendant and the Siblings, acting in the best interest of the Trust and themselves as the ultimate beneficiaries.  Accordingly, summary judgment on the § 523(a)(4) count is not appropriate.

### 3.  § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge.  11 U.S.C. § 523(a)(6). Section 523(a)(6) covers only "acts done

34

with the actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Accordingly, "a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995). Plaintiff must show Defendant "'had a subjective motive to inflict injury or believed his conduct was substantially certain to cause injury,'" and the Court may infer such subjective intent "from surrounding circumstances." *In re Smith*, 592 B.R. 390, 395 (Bankr. N.D. Ga. 2018) (quoting *Hot Shot Kids, Inc. v. Pervis (In re Pervis)*, 512 B.R. 348, 376 (Bankr. N.D. Ga. 2014)). "To establish malice, Plaintiff[] must show that Defendant's actions were 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Watson*, 2019 WL 5388061, at *3 (Bankr. N.D. Ga. Oct. 18, 2019) (quoting *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)). In the Eleventh Circuit, "a party need not prove specific intent to harm another, as malice can be implied or constructive, 'if the nature of the act itself implies a sufficient degree of malice.'" *In re Carroll,* 505 B.R. 74, 80 (Bankr. N.D. Ga. 2014) (quoting *In re Walker*, 48 F.3d at 1164). "While a finding of reckless disregard will not satisfy the 'willful' requirement, it is sufficient to establish malice." *Id*. (citing *In re Rebhan*, 842 F.2d 1257, 1262–63 (11th Cir.

35

1988)).

In the Motion, Plaintiff submits that the undisputed facts show that Defendant devised a plan to abandon the Trust, dissolve Plaintiff, and steal Plaintiff's money. Plaintiff similarly asserts that the undisputed facts show that Defendant executed his plan and engaged in additional acts, such as failing to keep business records and failing to cooperate in discovery in the Lenox Pines Action, to cover up his scheme, and that these actions caused Plaintiff to suffer injury by being administratively dissolved and from the loss of its funds. Under Plaintiff's theory, Defendant's actions were wrongful because they were done in violation of Defendant's fiduciary obligations to Plaintiff as its manager and his fiduciary obligations as a co-trustee of the Trust.

In response, Defendant apparently construes the Complaint to allege as its only basis for a claim under § 523(a)(6) that "Debtor failed to preserve documents and financial records, withheld records relating to Debtor's business and financial affairs, failed to explain his loss of assets and concealed discovery." Defendant first argues that he could not have caused injury to Plaintiff because courts have interpreted § 523(a)(6) to require "physical har[m]" to the plaintiff and that successful claims under § 523(a)(6) "generally have a tort as the underlying basis of the action and actual harm to property of a plaintiff or

36

actual physical harm to a plaintiff."  Second, Defendant asserts that Plaintiff has shown no

harm to its property resulting from Defendant's actions because the harm Plaintiff alleges

arose from Defendant's failure to keep books and records, but such books and records were

not Plaintiff's property.

In Count Three, which asserts the § 523(a)(6), the Complaint "reincorporates and

realleges Paragraphs 1 through 41 as if set forth fully herein," and in those paragraphs,

Plaintiff alleges that it is owed a debt resulting from money that Defendant fraudulently

borrowed, embezzled, transferred and ultimately defalcated from Plaintiff; "[Defendant]

looted all of Plaintiff's funds and bankrupted Plaintiff;" and Defendant "engaged in a

scheme to hinder, delay and defraud Plaintiff."  The paragraphs repeatedly refer to

Defendant's having engaged in a fraudulent scheme, and they are located in the body of the

Complaint because they are common to all counts.  The Court construes the Complaint to

assert that Defendant's devising and carrying out a scheme to loot Plaintiff of its funds and

dissolve Plaintiff, which included his attempts to cover up the scheme, caused an injury to

Plaintiff's property (never being repaid its money) and to Plaintiff (being dissolved by the

Georgia Secretary of State).  The Complaint placed Defendant on sufficient notice as to the

scope of Plaintiff's claim under § 523(a)(6) and that it was not limited to an injury involving

books and records.

In support of its request for judgment, Plaintiff has identified evidence in the record, including Defendant's sworn deposition testimony, that supports its claim. Although Defendant's specific response to Plaintiff's § 523(a)(6) claim is devoid of anything relevant to the issues raised in the Motion, Defendant has generally asserted that Plaintiff's Statement of Undisputed Facts contains legal conclusions regarding his intentions. The Court recognizes this and, for this reason, has not deemed those "facts" to be undisputed simply because they are stated in Plaintiff's Statement of Undisputed Facts. Nonetheless, when the nonmoving party does not admit that a fact is undisputed, the Court must consider the evidence itself relied upon by the moving party to establish that the fact is undisputed. When the Court does so in this case, the Court finds that the evidence establishes facts that support an inference that Defendant acted intentionally to deprive Plaintiff of its property.

That being said, there are disputes of fact relevant to the question of whether, ultimately, Defendant intended to injure Plaintiff. Defendant claims that his plan was to return Plaintiff's money to the Siblings and to himself, the parties whom all appear to agree were the sole, beneficial owners of the funds. As Defendant acted with knowledge that Plaintiff had an obligation to the Trust, as its owner, and the Trust had an obligation to

38

eventually disburse the trust funds to Defendant and the Siblings, the Court cannot conclude that Defendant intended to injure Plaintiff by transferring the Funds and purchasing real estate if he intended the profits from those deals would eventually benefit the Siblings and himself in satisfaction of Plaintiff's obligation to the Trust.  Defendant's conduct may give rise to liability for breach of his fiduciary duty as Plaintiff's manager, but questions of fact remain as to whether his conduct was willful or malicious for purposes of § 523(a)(6).  At trial, Plaintiff may demonstrate that Defendant never intended to return any profits to the Siblings, and, therefore, he acted with a substantial certainty that Plaintiff would suffer an injury.  But the Court cannot determine that point at this time.

C.  § 727(a)

In the Complaint, Plaintiff asserts that Defendant should be denied a discharge pursuant to §§ 727(a)(2) through (5) based on allegations that Defendant intentionally failed to disclose his interest in the Life Insurance Policy and the amount of his income from operating his businesses in 2015, 2016, and 2017, and because he cannot adequately explain the loss of his assets.  "The denial of discharge in bankruptcy is an extraordinary remedy, and statutory exceptions to discharge are to be construed liberally in favor of the debtor's discharge; strictly against the party objecting to discharge; and must not be based upon

conjecture." *Protos v. Silver*, 2008 WL 11441846, at *2 (N.D. Ga. Nov. 10, 2008), *aff'd sub nom. In re Protos*, 322 F. App'x 930 (11th Cir. 2009).

1. § 727(a)(2)

Under § 727(a)(2), the Plaintiff must prove the following by a preponderance of the evidence to support a denial of discharge: "(1) that the act complained of was engaged in within one (1) year prior to the date the petition was filed, (2) that the act was engaged in with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted of transferring, removing, destroying, or concealing any of the debtor's property." *Jennings v. Maxfield,* 533 F.3d 1333, 1339 (11th Cir. 2008). Because a debtor is not likely to "admit that he intended to hinder, delay, or defraud his creditors, the debtor's intent may be established by circumstantial evidence or inferred from the debtor's course of conduct," based on certain badges of fraud. *Id*.; *see also Gebhardt v. McKeever (In re McKeever)*, 550 B.R. 623, 635 (Bankr. N.D. Ga. 2016).

In the Motion, Plaintiff submits that the undisputed facts show that Defendant violated § 727(a)(2) by concealing the Life Insurance Policy, which was property of the bankruptcy estate, with actual intent to hinder, delay, or defraud a creditor, and by later converting the Policy into cash and using the funds, rather than turning them over to the

Chapter 7 Trustee.  Plaintiff also argues that the undisputed facts show that Defendant owned additional property in the possession of Hayden Smith that he did not disclose on Schedule A/B.

In response, Defendant argues that disputes of material exist as whether he concealed and failed to turn over assets to the Chapter 7 Trustee.  Specifically, Defendant states that, with respect to the Life Insurance Policy, Defendant's counsel advised the Chapter 7 Trustee "of the issue with respect to the insurance policy and the cash value," the Defendant and the Chapter 7 Trustee reached a settlement of the issue, and Plaintiff failed to object to the motion to approve the settlement.  Defendant further states that he will testify that he did not believe that the Insurance Policy was effective on the Petition Date because he had not made the annual premium payments required.  Defendant does not address the possibility that he owned or claimed an ownership interest in assets held by Hayden Smith.

The Court notes that Defendant failed to submit evidence in response to the Motion regarding his intent as to the disclosure of his assets and his failure to turn over the proceeds of the Insurance Policy.  Further, the Court questions the relevance of the fact that the Chapter 7 Trustee agreed to a settlement of this issue and notes that Defendant has not

41

really offered any excuse as to why he cashed in the Life Insurance Policy and kept the proceeds. Nonetheless, the evidentiary record is not complete as to what happened to the Life Insurance Policy. Plaintiff's only reference to what became of the Insurance Policy is in its Statement of Undisputed Facts. Defendant has denied these statements relevant to his disposition of the Insurance Policy and its proceeds, and Plaintiff's Statement of Undisputed Facts contains no citation to record evidence. Further, Plaintiff's Statement of Undisputed Facts fails to mention property in the possession of Hayden Smith. Although there is a reference to some items of personal property in an email attached to the Hayden Smith Affidavit, the Court cannot determine without additional evidence whether these items were listed on Defendant's Schedule A/B sufficiently to make the Chapter 7 Trustee aware of their inclusion and exemption. The Court agrees with Defendant that it is best to await a trial as to these issues. Denial of a debtor's discharge is a serious matter and generally requires an evaluation of the debtor's motives and state of mind that cannot be done effectively through the filing of an affidavit. *See In re Chi*, 2008 WL 7874773, at *3 (Bankr. N.D. Ga. Aug. 29, 2008) ("Given the harshness of the remedy sought herein, and the nature of ascertaining subjective intent and its general unsuitability to summary disposition, the Court must hear Debtor's testimony and observe her demeanor before

42

making any findings concerning whether the transactions in question were made fraudulently and knowingly within the meaning of the aforesaid statutory provisions."); *see also In re Brooks*, 548 B.R. 585, 593 (Bankr. S.D. Ga. 2016) ("Generally, resolution of objections to discharge under 11 U.S.C. § 727 are not appropriate at the summary judgment stage.").  To the extent necessary, the Court, therefore, exercises its considerable discretion to not grant summary judgment.

### 2. § 727(a)(3)

Section 727(a)(3) provides that a discharge shall not be granted if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3). This subsection does not require a showing of fraudulent intent. *Protos v. Silver (In re Protos)*, 322 F. App'x 930, 935 (11th Cir. 2009) (per curiam).

In the Motion, Plaintiff asserts that the undisputed facts show that Defendant violated § 727(a)(3) by not maintaining adequate books and records, such as a general ledger, and by commingling his business and personal records such that Defendant's

43

financial condition cannot be ascertained.   Plaintiff relies on the fact that, although Defendant was the manager of a limited liability company and a co-trustee of the Trust, he did not keep adequate records of his transactions using the funds received from Plaintiff and the Trust and has failed to file individual tax returns since 2013.  In recognition that the Court must consider what a reasonable person in Defendant's position would have done, Plaintiff notes that Defendant has an extensive background in the real estate business and is a college graduate, although the Court notes that no facts regarding Debtor's education are stated in Plaintiff's Statement of Undisputed Facts and there is no citation to record evidence in the Motion to support this fact.  Plaintiff additionally asserts that Defendant's failure to file his tax returns has resulted in his inability to amend his SOFA to disclose the amount of his income for the years leading up to the Petition Date, thus denying the Chapter 7 Trustee and Defendant's creditors critical information regarding his financial condition.

Defendant responds by noting that he maintained 4,000 pages of personal and business records, that he is making progress with the preparation and filing of his tax returns, and that he has made documents available to Plaintiff throughout these proceedings.  Again, although Defendant has failed to cite to record evidence to oppose Plaintiff's Motion, the Court is aware that Defendant has attempted to make records

44

available to Plaintiff in connection with these matters, as demonstrated by a detailed list of documents produced, which include bank statements. *See* Doc. 43. Plaintiff has not clearly shown why the information provided thus far is not adequate to allow the Chapter 7 Trustee and creditors to reconstruct Defendant's financial transactions. The Court agrees with Defendant that this question requires judicial review and determination that is best done at trial where the Court can evaluate the totality of the circumstances. *See In re Mitsopoulos*, 548 B.R. 620, 630 (Bankr. E.D.N.Y. 2016) ("[E]ven if the Court were to determine that the Debtors' documents and financial records are insufficient, § [727(a)(3)], affords the Debtors an opportunity at trial to offer a justification under the circumstances."); *In re Brooks,* 548 B.R. 585, 594 (Bankr. S.D. Ga. 2016) ("While Plaintiffs are correct that Debtor cannot rely on blanket assertions and must bring forth sufficient credible evidence to overcome the objection, at this point the Court needs to consider the evidence, hear the testimony, observe the witnesses' demeanor, consider the nature of the business arrangements and sophistication of the parties."). "The adequacy of a debtor's records is determined on a case by case basis, . . .and judges have broad discretion to deny discharge based on inadequately kept books and records." *In re Lufkin,* 393 B.R. 585, 593 (Bankr. E.D. Tenn. 2008), *aff'd*, 2010 WL 1332114 (E.D. Tenn. Mar. 29, 2010) (citation omitted). As the Court must view

the facts and all resulting inferences in a light most favorable to Defendant, as the nonmoving party, the Court finds that Plaintiff has failed to demonstrate the absence of disputes of material questions of fact as to the adequacy of Defendant's records and as to whether Defendant's particular circumstances justified any failure in record-keeping. Therefore, summary judgment is not warranted as to § 727(a)(3).

### 3.   § 727(a)(4)

Under § 727(a)(4)(A), the Court shall not grant a discharge if it finds that the "debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A). "To insure veracity, intentional omissions from a debtor's schedules are also actionable under this provision." *See In re Smith*, 578 B.R. 866, 874 (Bankr. N.D. Ga. 2017) (citing *Patriot Fire Protection, Inc. v. Fuller (In re Fuller)*, 560 B.R. 881, 890–91 (Bankr. N.D. Ga. 2016)). To prevail under § 727(a)(4)(A), Plaintiff must prove that: (1) the debtor "knowingly and fraudulently" made a false oath; and (2) concerning a material fact. *Id*. (citing *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991)). When the false oath is an omission from the schedules, "actual fraudulent intent . . . may be inferred from the totality of the circumstances surrounding the debtor's case," and "reckless indifference to the truth is sufficient to prove fraudulent intent," especially

46

when there is a "demonstrated pattern of omissions." *Id*. "The discharge may not be denied, however, when the untruth was the result of a mistake or inadvertence." *In re Robertson*, 576 B.R. 684, 709 (Bankr. N.D. Ga. 2017); *see also In re Garcia*, 586 B.R. 909, 919 (Bankr. N.D. Ill. 2018). ("[A]bsent some other indicia of fraud or reckless disregard, amendment alone cannot suffice to satisfy section [727(a)(4)].").  If the Court finds that the original schedules were false and filed intentionally or recklessly, the fact that the debtor later amended "the schedules does not negate the falsity of the prior omission." *Robertson*, 576 B.R. at 710.; *see also Matter of Fuller*, 560 B.R. 881, 891–92 (Bankr. N.D. Ga. 2016) ("[A] debtor may not redeem himself, and become entitled to a discharge, by later revealing information he should have disclosed initially.").

Under § 727(a)(4)(D), the Court shall not grant the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(D).

In the Motion, Plaintiff seeks judgment as a matter of law as to § 727(a)(4)(A) and (D) and contends that the following undisputed facts demonstrate that Defendant

knowingly and fraudulently, in or in connection with the case—made a false oath or account and failed to turn over to the Chapter 7 Trustee recorded information regarding debtor's property and financial affairs:  (1) Defendant failed to disclose the Life Insurance Policy on his original or amended Schedule A/B, in essence stating that he did not have an interest in a life insurance policy; (2) shortly before filing Schedule A/B, Defendant had disclosed the ownership of the Life Insurance Policy in his divorce action; (3) Defendant cashed out the Life Insurance Policy and spent the proceeds without disclosing the Life Insurance Policy to the Chapter 7 Trustee or amended Schedule A/B; and (4) Defendant failed to include an amount as to his income for the three years preceding the Petition Date and falsely represented on his SOFA that he was working to prepare his taxes and would update the answer to the income question once he had the necessary information.  Plaintiff argues that the Court can infer from these facts that Defendant made these false oaths knowingly and fraudulently and failed to turn over records to the Chapter 7 Trustee from the totality of the circumstances of this case.

Defendant again insists that he has accurately stated his income, listed assets, and listed all debts based upon his knowledge, information, and belief at the time of filing, that he acted promptly to amend his schedules and SOFA as necessary, and continued to

cooperate with the Chapter 7 Trustee throughout the case.  Defendant also asserts again that

he is working toward filing all missing tax returns and has made the 2018 return available

to the Chapter 7 Trustee and Plaintiff.  As to the Life Insurance Policy, Defendant

apparently obtained documentation regarding the Policy, which he has attached as an

exhibit to the Defendant's Response.  Plaintiff's claims under § 727(a)(4) require fact-

intensive analyses. Although there may be facts surrounding Defendant's failure to

schedule assets and use of those assets, Plaintiff's interpretation of and inferences from

those facts are not dispositive on the record presently before the Court. Consequently,

Plaintiff's motion for summary judgment on its § 727(a)(4) claims is denied.

### 4.  § 727(a)(5)

Finally, under § 727(a)(5), the Court shall not enter a discharge if the debtor fails to

offer a satisfactory explanation for the loss of assets. 11 U.S.C. § 727(a)(5).  Here, Plaintiff

must prove "a discrepancy between the property listed in the schedules and the assets shown

in other financial documents, often ones in existence before the bankruptcy filing." *Smith*,

578 B.R. at 875.  "'A focus on the two years prior to the bankruptcy filing is common . . .

[but] [i]nquiries beyond the two-year period may be warranted." *In re Robertson*, 576 B.R.

684, 713 (Bankr. N.D. Ga. 2017).  "At that point, the burden shifts to the debtor to explain

49

what happened to the property in question and why it is not reflected in the schedules, subject to the Court's review of credibility and whether such explanation is convincing." *Smith*, 578 B.R. at 875 (citing *Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246 (11th Cir. 1995); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir. 1984)).

There is no per se requirement that a debtor produce documents or independent testimonial evidence. *In re Buzzelli*, 246 B.R. 75, 117 (Bankr. W.D. Pa. 2000). Rather, "a debtor's testimonial explanation, by itself, potentially may suffice to satisfy the debtor's burden under § 727(a)(5) if it is convincing to the Court; however, if said testimonial explanation is, by itself, not convincing to the Court, then the debtor, in order to carry his or her burden under § 727(a)(5) and prevail thereunder, must come forward with sufficient corroboration in the form of documentation or independent testimony that will convince the Court." *Id*. The Court "only needs to decide whether the explanation provided satisfactorily explains what happened to the asset, not whether what happened to it was proper." *In re Ross,* 359 B.R. 690, 700 (Bankr. N.D. Ill. 2007); *see also Robertson*, 576 B.R. at 714 ("'Courts are not concerned with the wisdom of a debtor's disposition of assets but, instead, focus on the truth, detail, and completeness of the debtor's explanation of the loss.'").

50

As to its claim under § 727(a)(5), Plaintiff asserts that it has met its burden of identifying assets that were in Defendant's possession and that Defendant has failed to meet his burden of satisfactorily explaining why he no longer has the assets.  Plaintiff argues that the undisputed facts show that Defendant had the assets; Defendant testified as late as August 31, 2016, that he was "preserving" funds belonging to either Plaintiff or the Trust, and Defendant has not explained what he did with the funds.

In response, Defendant asserts that he has maintained sufficient records and has provided satisfactory explanations as to his financial condition.  In any event, Defendant argues that, "in order to determine if [Defendant] has provided a sufficient explanation for his financial situation, the Court must conduct a trial and provide the Debtor with an opportunity to explain his financial situation."  The Court agrees that Defendant has attempted to explain how funds were invested and what happened to the funds once particular pieces of real property were sold.  "Whether those explanations are sufficient (even if not meritorious) is a matter for trial."  *In re Robertson*, 576 B.R. 684, 714 (Bankr. N.D. Ga. 2017).  Defendant is warned, however, that at trial, once Plaintiff establishes the existence of assets in Defendant's possession, Defendant may not simply present his boxes of documents, which, "standing alone are incomprehensible."  *In re Hansen*, 325 B.R. 746,

51

764 (Bankr. N.D. Ill. 2005). "Rendering them comprehensible [will be Defendant's] job, not the job of [Plaintiff] or the court." *Id.*

III.   <u>Conclusion</u>

For the reasons stated above,

IT IS ORDERED that summary judgment is not appropriate on any count of the Complaint;

IT IS FURTHER ORDERED that the Motion is **DENIED**.

<b>END OF DOCUMENT</b>

**Distribution List**

**Denise Dotson, Esq.**
P.O. Box 435
Avondale Estates, GA 30002

**David L. Smith, Jr.**
3795 N. Stratford Road
Atlanta, GA 30342

**Martha A. Miller**
Martha A. Miller, P. C.
P. O. Box 5630
Atlanta, GA 31107

**Brendon McLeod**
McManamy McLeod Heller, LLC
Suite 110
3520 Piedmont Road

Atlanta, GA 30305

**Tom Pye**
Law Offices of Tom Pye, P.C.
Waterford Centre, Suite 120
5555 Triangle Parkway
Norcross, GA 30092

**George M. Geeslin**
Two Midtown Plaza, Suite 1350
1349 West Peachtree Street, NW
Atlanta, GA 30309